IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TANYA FRAZER,

    Plaintiff,

v.                                          Civ. No. 20-1147 GBW

KILOLO KIJAKAZI,
*Acting Commissioner of the Social*
*Security Administration*,

    Defendant.

## ORDER GRANTING REMAND

This matter comes before the Court on Plaintiff's Opposed Motion to Reverse

and/or Remand.  *Doc. 18*.  For the reasons explained below, the Court GRANTS

Plaintiff's Motion and REMANDS the case to the Commissioner for further proceedings

consistent with this opinion.

### I.    PROCEDURAL HISTORY

Plaintiff filed an initial application for SSDI on January 18, 2018, alleging

disability beginning December 8, 2017.  Administrative Record ("AR") at 144.  Plaintiff's

application was denied on initial review on May 30, 2018, and again on reconsideration

on May 1, 2019.  AR at 82, 89.  On May 6, 2020, a hearing was held by an Administrative

Law Judge ("ALJ").  AR at 34–53.  The ALJ issued an unfavorable decision on June 2,

2020.  AR at 17.  Plaintiff sought review from the Appeals Council, which denied review

on September 23, 2020, AR at 6, making the ALJ's denial the Commissioner's final

decision, *see* 20 C.F.R. §§ 404.981, 422.210(a).

On November 5, 2020, Plaintiff filed suit in this Court, seeking review and

reversal of the ALJ's decision. *See doc. 1.* On June 30, 2021, Plaintiff filed her Opposed

Motion to Reverse and/or Remand. *See doc. 18.* The Commissioner responded on

September 8, 2021. *See doc. 22.* Briefing on Plaintiff's Motion was complete on October

29, 2021, *see doc. 26,* with the filing of Plaintiff's reply, *see doc. 25.*

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.,*

933 F.2d 799, 800–01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court]

neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks

omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.3d at 800 (internal quotation marks omitted). "The record must

demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to

discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must

discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing

two inconsistent conclusions from the evidence does not prevent [the] findings from

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007).

### III.   ALJ EVALUATION

#### A.   Legal Standard

For purposes of SSDI, an individual is disabled when she "is unable to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §

1382c(a)(3)(A). To determine whether a person satisfies these criteria, the Social

Security Administration ("SSA") has developed a five-step test. *See* 20 C.F.R. §

404.1520. If the Commissioner finds an individual disabled at any step, the next step is

not taken. *Id.* § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) she

is not engaged in "substantial gainful activity"; (2) she has "a severe medically

determinable physical or mental impairment … or a combination of impairments" that

has lasted or is expected to last for at least one year; and that either (3) her

impairment(s) meets or equals one of the "Listings" of presumptively disabling

impairments; or (4) she is unable to perform her "past relevant work." *Id.* §

404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th

Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017,

1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional

capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. §

404.1545(a)(3). A claimant's RFC is "the most [she] can still do despite [physical and

mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ "determine[s] the physical

and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023.

"To make the necessary findings, the ALJ must obtain adequate 'factual information

about those work demands which have a bearing on the medically established

limitations.'" *Id*. at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at

*3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is

capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or

she proceeds to step five of the evaluation process. At step five, the burden of proof

shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On June 2, 2020, the ALJ issued a decision denying Plaintiff's application for SSDI. *See* AR at 17. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since December 8, 2017, the alleged onset date." AR at 22. At step two, he found that Plaintiff suffers from "the following severe impairments: diabetes, mild back degenerative disc disease and arthralgia." *Id.* He also noted that Plaintiff has migraines, minimal hand and foot neuropathy, knee surgery, ovarian surgery, GERD, dyslipidemia, elevated liver function, menorrhea, endometrium curettage, … depression, bipolar, anxiety and obsessive and trauma stressor disorders," but found these conditions non-severe. AR at 22-23. At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings. AR at 24.

At step four, the ALJ found that Plaintiff has the RFC "to perform the full range of light work as defined in 20 CFR 404.1567(b)." AR at 24. In making this finding he concluded that Plaintiff's medically determinable impairments could reasonably be

expected to cause her alleged symptoms.  AR at 25.  He held, however, that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence and other evidence in the record.  *Id.*  He found persuasive the medical opinions of an agency physician and an agency psychologist and found less persuasive the opinions of consulting physicians Dr. Moon Yoon and Dr. John Owen.  AR at 27.  He also found less persuasive the opinion of Plaintiff's primary care physician, Dr. Elaine Papafrangos.  *Id.*  Then, the ALJ concluded that Plaintiff's RFC would enable her to meet the physical and mental demands of her past relevant work, such that she can continue to perform her past relevant work as a social service aid and has therefore not been under a disability within the meaning of the Social Security Act from December 8, 2017, through the date of his decision.  AR at 28-29.

## IV.  PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred at step four in four ways: by (1) failing to "meaningfully consider Plaintiff's symptom allegations," *see doc. 18* at 25-28; (2) failing to "properly consider" the opinions of Dr. Papafrangos, Plaintiff's treating physician, *see id.* at 28, or comply with the explanatory requirements of 20 C.F.R. § 404.1520c(b) when rejecting her opinion as less persuasive, *see id.* at 29; (3) not adequately explaining his failure to include any mental limitations in Plaintiff's RFC, *see id.* at 28-30; and (4) failing

to "properly consider" the medical opinions of Dr. Owen, a consulting psychologist, *see id.* at 30.  Defendant disputes each of these arguments.  *See generally doc. 22.*

V.   **ANALYSIS**

The Court agrees with Plaintiff's second argument and so does not reach her first, third, or fourth ones.  The ALJ erred at step four by not complying with the requisite legal standards when discussing how he considered the medical opinion of Dr. Elaine Papafrangos, Plaintiff's primary care provider.

### A.   20 C.F.R. § 404.1520c Governs the ALJ's Analysis of Medical Opinions.

Because Plaintiff applied for SSDI benefits after March 27, 2017, the regulation applicable to the ALJ's evaluation of medical source opinions in the administrative record is 20 C.F.R. § 404.1520c.  *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 & n.8 (10th Cir. July 6, 2021).  Prior to March 27, 2017, the framework for analyzing the opinions of medical sources was provided by the Treating Physician Rule, which originated in circuit court decisions and was later formally adopted by the Social Security Administration in a 1991 Rule.  *See Crystal R. E. v. Kijakazi*, No. 20-cv-00319-SH, 2022 WL 446023, at *3 (N.D. Okla. Feb. 14, 2022) (discussing the history of the Treating Physician Rule).  The Treating Physician Rule required ALJs to give greater weight to "the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment [than to] reports of physicians employed and paid

by the government for the purpose of defending against a disability claim." *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983) (quoting *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)). Section 404.1520c eliminates the Treating Physician Rule by neither assigning specific evidentiary weight nor deferring to any medical opinions. 20 C.F.R. § 404.1520c(a). It also changes the unit of evaluation from a medical opinion to a medical source. *Id.* § 404.1520c(a), (b)(1) (requiring the ALJ to evaluate the medical opinions from a single source together instead of considering each medical opinion from one medical source individually).

The Court rejects Plaintiff's contention that Tenth Circuit precedent applying the Treating Physician Rule remains controlling despite the Social Security Administration's update to its regulations, as many other district courts have already done, *see Crystal R. E.*, 2022 WL 446023, at *5 (collecting cases). First, in arguing that the effect of 20 CFR § 404.1520c is to "short-circuit[] the analysis of a claim because of administrative expediency," *doc. 18* at 23, and deprive claimants of the opportunity to have "all of the evidence considered" by an ALJ, *id.* at 24, Plaintiff appears to misunderstand the relationship between § 404.1520c(b)'s articulation requirements, the factors ALJs consider pursuant to § 404.1520c(c) when considering medical opinions and prior administrative medical findings, and ALJs' obligation to "review all of the evidence relevant to [a] claim." 20 C.F.R. § 404.1520b. The 2017 Rule changed the

prioritization of the factors ALJs consider and the requirements applicable to an ALJs'

articulation of how they considered the factors, but it does not absolve ALJs of their

responsibility to "consider all relevant evidence in the case record in reaching their

disability determination." *Vigil v. Saul*, No. CV 20-632 CG, 2021 WL 2117184, at *5

(D.N.M. May 25, 2021) (citing *Silva v. Saul*, Civ. No. 19-913 WJ/KK, 2020 WL 4220862, at

*4 (D.N.M. July 23, 2020), *report and recommendation adopted*, 2020 WL 7890832 (D.N.M.

Aug. 7, 2020)); *Crystal R. E.*, 2022 WL 446023, at *5.

     Plaintiff is also mistaken that *Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983),

remains good law to the extent it requires ALJs to assign greater persuasive value to

examining source opinions than to those from non-treating and non-examining sources.

The Supreme Court has established that where a prior judicial construction of a statue

conflicts with an agency's subsequent interpretation entitled to *Chevron* deference, the

judicial construction forecloses the agency's construction "only if the prior court

decision holds that its construction follows from the unambiguous terms of the statute

and thus leaves no room for agency discretion." *Nat'l Cable & Telecomms. Ass'n v. Brand

X Internet Servs.*, 545 U.S. 967, 982 (2005). The Tenth Circuit precedent that embodies

the Treating Physician Rule outside of the 1991 Rule was not compelled by

unambiguous statutory language, as the Social Security Act is silent as to the proper

method for evaluating a treating physician's medical opinion. *See Crystal R. E.*, 2022 WL

446023, at *5 (citing 42 U.S.C. § 423(d)(5)(B)); *Jones v. Saul*, No. 2:19-cv-01273 AC, 2021

WL 620475, at *8 (E.D. Cal. Feb. 17, 2021) (holding that analogous circuit precedent

establishing the Ninth Circuit's construction of the Treating Physician Rule was not

compelled by unambiguous statutory language).  Therefore, the 2017 Rule displaces

contradictory Tenth Circuit precedent unless it is not entitled to *Chevron* deference—i.e.,

unless it is arbitrary, capricious, or manifestly contrary to a statute.  *See Harris v. Saul*,

Civil Action No 19-cv-03715-NRN, 2021 WL 406080, at *4 (D. Colo. Feb. 5, 2021); *Crystal*

*R. E.*, 2022 WL 446023, at *5.

Plaintiff does not make any arguments concerning whether the 2017 Rule is

arbitrary and capricious, so the Court need not reach the issue.  *See Keener v. Saul*, Case

No. CIV-20-649-SM, 2021 WL 2460614, at *4 (W.D. Okla. June 16, 2021); *Miles v. Saul*,

Civil Action No. 20-cv-1456-WJM, 2021 WL 3076846, at *4 n.3 (D. Colo. July 21, 2021).

Nevertheless, the Court notes other district courts' determinations that the 2017 Rule is

not arbitrary, capricious, or contrary to statute.  *See Novak v. Saul*, Case No. CIV-20-203-

STE, 2021 WL 1646639, at *3 (W.D. Okla. Apr. 27, 2021); *Jones*, 2021 WL 620475, at *7;

*Dany Z. v. Saul*, 531 F. Supp. 3d 871, 883 (D. Vt. 2021).  The Court therefore finds that

Plaintiff's arguments concerning the continued applicability of the Treating Physician

Rule are without merit and analyzes whether the ALJ properly analyzed Dr.

Papafrangos's medical opinion under 20 C.F.R. § 404.1520c.

**B. <u>The ALJ Did Not Adequately Explain His Rejection of Dr. Papafrangos's Opinion</u>**

Under 20 CFR § 404.1520c, the persuasiveness of a medical source's opinions depends on five factors: "supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'"  *Zhu*, 2021 WL 2794533, at *5 (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)).  As the most important of the five factors, *see id.* at *6, supportability and consistency are the only two that the ALJ must explain when assessing the persuasiveness of a medical source's opinions, 20 C.F.R. § 404.1520c(b)(2).  The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Zhu*, 2021 WL 2794533, at *5 (internal brackets and ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(1)).  Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'"  *Id.* (internal ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(2)).

11

When assessing the supportability and consistency of a medical source's opinions, "all the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings." *Lobato v. Kijakazi*, Civ. No. 21-207 JB/KK, 2022 WL 500395, at *11 (D.N.M. Feb. 18, 2022) (quoting *Grogan*, 399 F.3d at 1262). The ALJ also cannot "pick and choose among medical reports," using only portions of evidence that are favorable to his position and disregarding those that are not. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). This requirement, though, does not mean that the ALJ must discuss every piece of controverted evidence. See *Clifton*, 79 F.3d at 1009-10. Rather, it merely requires the ALJ to show that he considered evidence unfavorable to his findings before making them. *See id.* at 1010.

Dr. Elaine Papafrangos, Plaintiff's primary care physician, wrote a medical source statement on March 23, 2020. *See* AR at 688. In it, she opined that "Ms. Frazer has developed several chronic medical conditions which have rendered her disabled from being able to work," including "type 1 diabetes … with blood sugars that range from extremely high to critically low within a short span of time" such that Plaintiff is considered a "brittle diabetic." *Id.* In addition, Dr. Papafrangos opined that Plaintiff suffers from "chronic discomfort" due to the "constellation" of polyarthritis; swelling and pain in her hands, wrists, ankles and feet; chronic back pain; and diabetic

peripheral neuropathy.  *Id.*  Finally, Dr. Papafrangos opined that Plaintiff suffers from chronic depression and "chronic fatigue, in great part due to her chronic illnesses and … her inability to sleep through the night with recurrent alarms of low blood sugar." *Id.*  With regard to Plaintiff's limitations from these conditions, Dr. Papafrangos opined that Plaintiff is "confused, drowsy and cognitively impaired at times when her blood sugars are very low;" she has difficulty sitting or standing in any position "for long periods of time;" and "her numerous chronic conditions seriously disable her from being able to function reliably in a workplace."  *Id.*

After summarizing Dr. Papafrangos's opinions contained in her treating source statement, the ALJ discussed it as follows: "Interestingly, Dr. Pap[a]frangos never referred the claimant to a specialist.  Moreover, Dr. Pap[a]frangos' treatment records do not support the claimed severity of claimant's condition, and her opinion is also not supported by the other evidence in this case.  Therefore, I find Dr. Papafrangos['s] opinion to be less persuasive."  AR at 27.  Plaintiff argues that the ALJ failed to provide adequate reasons for his finding that Dr. Papafrangos's medical opinion is "less persuasive," *see id.*, because (1) he "fail[ed] to reference any evidence to support his claim that Dr. [Papafrangos's] opinions are not supported by her treatment notes or the evidence of record," (2) he never "discuss[ed] the evidence that supports or contradicts Dr. Papafrangos's opinions," and (3) because Plaintiff was already seeing two diabetes

specialists and a rheumatologist, the ALJ erred by including in his supportability

findings that Dr. Papafrangos never referred Plaintiff to a specialist, *doc. 18* at 29.

The 2017 regulations that establish an ALJ's responsibility to discuss the

supportability and consistency of a medical opinion when articulating its persuasive

value do not clearly indicate the required depth of an ALJ's discussion of these two

factors. *See* 20 C.F.R. § 404.1520c. Courts have deferred to ALJs' "minimalist" findings

on the supportability and consistency of medical opinions. *See Frank v. Kijakazi,* Civil

Action No. 20-cv-00691-NYW, 2021 WL 3796620, at *6 (D. Colo. Aug. 25, 2021); *Cox v.

Saul,* CIV 19-1117 KBM, 2020 WL 6701426, at *6 (D.N.M. Sept. 9, 2020); *John H. v. Saul,*

Case No. 2:20-cv-00255-JCB, 2021 WL 872320, at *5 (D. Utah March 8, 2021). Yet, §

404.1520c(b)'s requirement that an ALJ must "explain *how* [he] considered the

supportability and consistency factors," 20 C.F.R. § 404.1520c(b)(2) (emphasis added),

and a reviewing court's role of determining whether an ALJ's findings are supported by

substantial evidence, indicate that an ALJ's explanation must at least "[e]schew[] rote

analysis and conclusory explanations [and] discuss … the crucial factors in any

determination with sufficient specificity to enable the reviewing court to decide

whether the determination is supported by substantial evidence," *Pamela P. v. Saul,* 3:19-

CV-575 (DJS), 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020) (internal ellipses and

quotation marks omitted) (quoting *Puckett v. Berryhill,* 17-CV-5392 (GBD) (KHP), 2018

WL 6625095, at *9 (S.D.N.Y. July 13, 2018)); *see also Lobato*, 2022 WL 500395, at *11

(contextualizing § 404.1520c's explanatory requirements in the "substantial evidence"

standard of review).  Therefore, while ALJs need not cite to specific record evidence to

discharge § 404.1520c(b)'s explanatory requirements, they must "note[] the evidence

upon which [they] relied, and that evidence [must be] specific, and verifiably supported

by the record evidence."  *See Victoria Jean G. v. Kijakazi*, CIVIL ACTION No. 20-4053-

JWL, 2021 WL 4168124, at *5 (D. Kan. Sept. 14, 2021); *White v. Kijakazi*, No. 3:21-CV-

00097, 2021 WL 4256303, at *14 (S.D.W. Va. Aug. 27, 2021) (finding that the ALJ's

discussion of medical opinion evidence was adequate because it "not[ed] how the

opinions were supported by the evidence of record, while recognizing where they fell

short of supportability [and] reconciled where the opinion evidence was consistent and

inconsistent with the overall record"), *report and recommendation adopted*, 2021 WL

4255629 (S.D.W. Va. Sept. 17, 2021).

Here, the ALJ's supportability analysis of Dr. Papafrangos's medical opinion

noted inconsistencies between the severity Dr. Papafrangos ascribed to Plaintiff's

conditions in her treating source statement and her treatment records and failure to

refer Plaintiff to a specialist.  *See* AR at 27.  The Court finds that this explanation

satisfies, albeit barely, the requirements of § 404.1520c(b).  Although the ALJ did not

include citations to contradictory portions of Plaintiff's treatment records, the ALJ's

analysis indicates the specific evidence upon which he relied: Dr. Papafrangos's

representations in Plaintiff's treatment records about the severity of Plaintiff's

condition. *See id.*; *Cox*, 2020 WL 6701426, at *6 (finding that the ALJ satisfied the

explanatory requirements of § 404.1520c(b)(2) by explaining that the medical opinion

was "unsupported by the objective medical evidence"). Moreover, Dr. Papafrangos's

failure to refer Plaintiff to a specialist is a sufficiently specific reason that is supported

by the administrative record.

To the extent Plaintiff argues that the ALJ's supportability analysis is not

supported by substantial evidence because Plaintiff "regularly presents to Dr.

Papafrangos and her endocrinologist with out-of-control diabetes, back pain, neck pain,

foot pain, headaches, depression/anxiety, and other symptoms," *doc. 18* at 29, the Court

disagrees. The supportability of a medical opinion is based on the relevancy of

"objective medical evidence and supporting explanations presented by a medical

source," 20 C.F.R. § 404.1520c(c)(1), so Plaintiff's argument misses the mark by reciting

the reasons for and the frequency of her visits with Dr. Papafrangos rather than

engaging with the evidence and conclusions presented by Dr. Papafrangos in her

medical opinion. In addition, the Court is not persuaded by Plaintiff's argument that

the ALJ's "rationale is legally insufficient" because "Plaintiff is already seeing two

diabetes specialists and a rheumatologist" and the ALJ "provides no indication of what

other specialists to whom Dr. Papafrangos should have referred Plaintiff," *Doc. 18* at 29.

Plaintiff does not contest the fact that Dr. Papafrangos never referred her to a specialist,

and the ALJ's opinion indicates that he was aware that Plaintiff's rheumatologist also

treated her for diabetes mellitus.  *See* AR at 26 (discussing Plaintiff's January 17, 2020,

visit with Dr. Ong, her rheumatologist).  The Court does not read § 404.1520c(b) to

require the ALJ to have indicated other specialists to which Dr. Papafrangos should

have referred Plaintiff and will not second-guess the ALJ's reasoning regarding the

import of Dr. Papafrangos's failure to make a referral.

On the other hand, the Court finds inadequate the ALJ's explanation of how he

analyzed the consistency of Dr. Papafrangos's opinion.  The ALJ's explanation is limited

to the statement that "[Dr. Papafrangos's] opinion is also not supported by the other

evidence in this case."  AR at 27.  Unlike the ALJ's discussion of the supportability

factor, this explanation fails to identify, even in general terms, any portion of Dr.

Papafrangos's treating source statement, any particular record evidence or general type

of record evidence (e.g., objective medical evidence, hearing testimony, etc.), or

otherwise any specific contradiction, and therefore prevents the Court from being able

to determine whether substantial evidence supports the ALJ's consistency finding.  An

ALJ's failure to provide any reasons for rejecting a medical source opinion beyond

stating that it is inconsistent with the record is grounds for remand.  *See Lobato*, 2022 WL

17

500395, at *9; *Dwyer v. Saul*, Civ. No. 20-80 JFR, 2021 WL 1574965, at *11 (D.N.M. Apr. 22, 2021).

Defendant argues that the ALJ's explanation of how he evaluated Dr. Papafrangos's medical opinion is sufficient because he "discussed and set forth the relevant medical evidence prior to evaluating Dr. Papafrangos's opinion" so he "was not required to repetitive [sic] re-discuss it when finding that Dr. Papafrangos's opinion was not persuasive." *Doc. 22* at 12 (citing *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012)). The Court does not read *Endriss* to stand for the proposition that the ALJ was not required to recite evidence previously discussed in his decision when articulating his consideration of Dr. Papafrangos's treating source statement. In the portion of the *Endriss* holding cited by Defendant, the court held that an ALJ who rejected a treating source's opinion was not required to recite medical evidence that he had previously discussed when rejecting a different treating source's "virtually identical" opinion. *Endriss*, 506 F. App'x at 776-77. Unlike in *Endriss*, the ALJ's decision here does not utilize identical reasoning to reject two treating source opinions, so without more, the ALJ's previous recitation of medical evidence is insufficient to indicate why the ALJ found Dr. Papafrangos's opinion inconsistent with the record. *See Regina H. v. Saul*, Case No. 2:19-CV-1335-JAR, 2020 WL 4200824, at *5 (D. Kan. July 22, 2020); *Dwyer*, 2021 WL 1574965, at *11; *Montoya v. Saul*, 1:20-cv-00212-LF, 2021 WL

2667163, at *8 (D.N.M. June 29, 2021); *McAfee v. Saul*, 1:18-cv-01205-LF, 2021 WL 876946,

at *2 (D.N.M. Mar. 9, 2021).[1]

Moreover, a careful review of the administrative record finds evidence that tends

to support aspects of Dr. Papafrangos's treating source statement that the ALJ did not

mention when discussing the medical evidence, and therefore cannot be deemed to be

incorporated by reference in the ALJ's medical opinion analysis.  Although the ALJ is

entitled to resolve evidentiary conflicts in the record and need not discuss every piece of

evidence, an ALJ's failure to explain how it considered probative contradictory

evidence is a basis for remand.  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007);

*Clifton*, 79 F.3d at 1009-10.  Here, Dr. Papafrangos's opinion that Plaintiff experiences

"poor blood sugar stability," *see* AR at 688, is corroborated by treatment records

indicating that Plaintiff experienced erratic blood glucose levels both before, *see* AR at

---

[1] Arguably, a portion of the *Endriss* holding to which Defendant does not cite provides a more persuasive argument for Defendant on the issue of whether an ALJ's previous recitation of medical evidence can be incorporated by reference in, and therefore be deemed to satisfy, an ALJ's obligation to explain how he evaluated the consistency of a medical source opinion.  *See* 506 F. App'x at 775-76 (finding the ALJ's evaluation of Dr. Munneke's medical source opinion adequate).  In its application of the old regulations' requirement that an ALJ provide good reasons for the weight assigned to a noncontrolling medical source's opinion, the *Endriss* court did not require the ALJ to have a "contemporaneous discussion of [objective medical evidence]" when he stated that portions of a medical opinion were inconsistent with the objective medical evidence.  *See id.* at 775.  However, the *Endriss* ALJ's analysis of Dr. Munneke's opinion can be distinguished from the ALJ's explanation of how he analyzed Dr. Papafrangos's opinion here.  The *Endriss* ALJ explained which portions of the medical source's opinion he was rejecting (Dr. Munneke's opinion that the plaintiff had various functional limitations, including those in "reaching, pushing, and pulling"), and the specific medical evidence that caused him to reject it ("objective medical evidence of record[] showing improvement in the claimant's overall condition since her second neck surgery in July 2007").  *See id.*  By contrast, the ALJ did not provide a comparable level of detail here.

485, and after, *see* AR at 727, she began using an insulin pump.  In addition, the ALJ's

summary of Plaintiff's January 17, 2020, appointment with Dr. Ong, Plaintiff's

rheumatologist, highlights Dr. Ong's note that Plaintiff had no known complications

from her diabetes mellitus while omitting mention of Dr. Ong's notes from that same

appointment indicating that Plaintiff's A1c and fructosamine values had worsened and

that he would revise Plaintiff's insulin pump settings, *see* AR at 25; AR at 725, 727.  The

brevity of the ALJ's consistency analysis prevents the Court from being able to

determine whether he considered medical evidence indicating that Plaintiff's blood

glucose levels remained uncontrolled when he weighed Dr. Papafrangos's opinion.  *See*

*Lobato*, 2022 WL 500395, at *9, *11.

## C. <u>The ALJ's Inadequate Explanation for His Rejection of Dr. Papafrangos's Opinion Was Not Harmless Error</u>

Defendant argues that even if the ALJ committed an error in his discussion of Dr.

Papafrangos's treating source statement, the error was harmless because Dr.

Papafrangos's statements that "Plaintiff's ability to 'function reliably … is reduced' or

that it was 'difficult for her to sit or stand in any position for long periods of time' were

so vague that they were of little assistance to the ALJ in assessing Plaintiff's specific

work-related abilities."  *Doc. 22* at 13 (quoting AR at 688).  The Court disagrees.

In general, the failure to provide adequate reasons for rejecting a medical opinion

"involves harmless error if there is no inconsistency between the opinion and the ALJ's

assessment of residual functional capacity," because "[i]n that situation, … the outcome would have been the same even if the medical opinion had not been rejected." *Lobato*, 2022 WL 500395, at *16 (quoting *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014)). On the other hand, an error in evaluating a medical source's opinion is not harmless when the ALJ would have assigned a more restrictive RFC and made different findings at steps four and five of the analysis if he had credited rather than rejected a medical source's opinion. *See id.*

The Court agrees with Defendant that some of Dr. Papafrangos's statements in her treating source opinion letter constitute evidence that is "inherently neither valuable nor persuasive" under the 2017 regulations. *See* 20 C.F.R. § 404.1520b. Such evidence includes "[s]tatements on issues reserved to the Commissioner," *id.* § 404.1520b(c)(3), such as whether a claimant "[is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work," *id.* § 404.1520b(c)(3)(i). Therefore, the ALJ did not need to analyze Dr. Papafrangos's statements that Ms. Frazer's chronic conditions "have rendered her disabled from being able to work" and that "her ability to function reliably in any job is greatly reduced." AR at 688.

However, Dr. Papafrangos also opined that Plaintiff's conditions "make[] it very difficult for her to sit or stand in any position for long periods of time," *id.*, which are functional limitations that are not incorporated in the RFC that the ALJ assigned to

Plaintiff, *see* AR at 24 (finding that Plaintiff has the RFC to perform "the full range of

light work as defined in 20 CFR 404.1567(b)"); 20 C.F.R. § 404.1567(b) (defining "light

work" as work that may require "a good deal of walking or standing, or … sitting most

of the time with some pushing and pulling of arm or leg controls").  The Court

disagrees with Defendant that these statements about Plaintiff's functional limitations

are too vague to be useful for the ALJ's RFC determination.  While statements that a

Plaintiff has "significant limitations" or "severe limitations" are not specific enough to

inform an ALJ's RFC determination, *see Dee B. v. Saul*, No. 2:19-cv-00013-PMW, 2020 WL

2616213, at *3 (D. Utah May 22, 2020); *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995),

Dr. Papafrangos's opinion that Plaintiff has difficulty with extended periods of walking

or standing describes Plaintiff's physical abilities "in relation to the physical exertional

requirements of sedentary, light, moderate, or heavy work" and are therefore

potentially useful, *see Bean*, 77 F.3d at 1214; 20 C.F.R. § 404.1513.

Finally, regardless of whether Dr. Papafrangos's opinions regarding Plaintiff's

physical limitations were too vague to be useful in the ALJ's RFC determination, Dr.

Papafrangos's treating source statement also contained an opinion about mental

limitations experienced by Plaintiff, *see* AR at 688, and the ALJ did not incorporate any

mental limitations into the RFC, *see* AR at 24.  Specifically, Dr. Papafrangos opined that

Plaintiff experiences mental limitations from her diabetes, including being "confused,

drowsy and cognitively impaired at times when her blood sugars are very low." AR at

688. According to the Social Security Administration's Policy Interpretation Ruling 14-

2p, which provides information about how the Administration evaluates diabetes

mellitus and its associated impairments and limitations, these are types of mental

limitations that the Commissioner considers when determining the RFC of an

individual who is experiencing the effects of diabetes mellitus. *See* SSR 14-2p, 2014 WL

2472008, at *6 (June 2, 2014). SSR 14-2p states that "[w]e consider all work-related

physical and mental limitations, whether due to an adult's [diabetes mellitus], other

impairment(s), or combination of impairments" when assessing a claimant's RFC. *Id.*

Indeed, SSR 14-2p specifically identifies "fatigue or difficulty with concentration that

interferes with [the] ability to perform work activity on a sustained basis" as an

example of a mental limitation that might be considered at the RFC stage. *Id.*

Therefore, the ALJ's failure to include any mental limitations in Plaintiff's RFC despite

Dr. Papafrangos's medical opinion letter indicating that Plaintiff experiences mental

limitations from her diabetes renders the ALJ's failure to provide adequate reasons for

rejecting Dr. Papafrangos's medical opinion a harmful error.[2]

---

[2] In so finding, the Court expresses no opinion regarding the merits of Plaintiff's argument that the ALJ erred by "fail[ing] to include any mental limitations in the RFC without explanation," *doc. 18* at 29, except to note that the ALJ was required to include the non-severe mental impairments that he found Plaintiff to have at step two in his RFC analysis. *See* AR at 23; *Alvey v. Colvin*, 536 F. App'x 792, 793-94 (10th Cir. 2013). It follows, then, that the ALJ should have considered Dr. Papafrangos's treating source opinion when determining Plaintiff's mental RFC. *See* 20 C.F.R. § 404.1545(e).

**VI.**   **CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ committed at least one reversable error at step four of his analysis.  Therefore, the Court GRANTS Plaintiff's Motion to Reverse and Remand (*doc. 18*) and REMANDS to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**